IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MONICA SHIGENAGA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-cv-1202-E |
| | § | |
| EQUIFAX INFORMATION | § | |
| SERVICES, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant TransUnion LLC's Motion to Dismiss (Doc. No. 14). After

careful consideration of the motion, Plaintiff's response, the reply, the record, and the applicable

law, the Court grants the motion.

Plaintiff Monica Shigenaga sued two consumer reporting agencies (CRAs) and two

furnishers of consumer information for violations of the Fair Credit Reporting Act (FCRA). The

following allegations come from Plaintiff's complaint as it pertains to TransUnion. In August

2004, Plaintiff secured a mortgage for property in Hawaii from Bank of America. The next year,

the mortgage was transferred to Nationstar Mortgage, LLC. In August 2010, Plaintiff filed for

bankruptcy. She was later discharged from bankruptcy and, since February 2016, she continued

to make regular monthly mortgage payments. In late 2018, the mortgage was transferred to

Shellpoint Mortgage Servicing.

In August 2019, Plaintiff requested and received a copy of her credit file "assembled,

evaluated, and disbursed by TransUnion and noticed that her Nationstar mortgage and her

1

Shellpoint mortgage accounts were reporting inaccurately." She noticed that her Nationstar account was not reporting despite being furnished by Nationstar to TransUnion. She also noticed her Shellpoint mortgage account was reporting that Shellpoint acquired the loan from another lender, Nationstar.

A copy of the August 2019 TransUnion credit report is attached to Plaintiff's complaint. It does not include any reporting of a Nationstar account. For the Shellpoint mortgage, it indicates the account was opened on August 10, 2004, and that Plaintiff is current on the account. It reflects payments beginning in December 2018.

Plaintiff alleges that on October 14, 2019, she disputed the reporting of the Nationstar account with TransUnion. She requested that TransUnion conduct a reasonable investigation and/or remedy the inaccuracies on her credit report. She included a portion of her Equifax credit report as proof the Nationstar account was being reported to the CRAs. TransUnion responded that the information does not appear on consumer files.

On or about December 31, 2019, Plaintiff again disputed reporting of the Nationstar mortgage account, as well as the Shellpoint mortgage account, with TransUnion. She included credit reporting that reflected the disputed and allegedly inaccurate information with her dispute letter. TransUnion responded to Plaintiff's second dispute in February 2020. According to Plaintiff, TransUnion failed to provide any information about Plaintiff's Nationstar mortgage and did not address the Shellpoint mortgage. Plaintiff alleges TransUnion chose to "verify" false information from unreliable sources, failed to correct the inaccurate information and continued to publish the inaccurate information regarding Plaintiff's Nationstar and Shellpoint mortgage accounts. TransUnion did not evaluate or consider any of Plaintiff's information, claim, or evidence and did not make any attempt to verify the Nationstar or Shellpoint reporting lines.

Plaintiff asserts claims against TransUnion for violations of the FCRA.  She alleges TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and files it published and maintained concerning her.  She also alleges TransUnion violated 15 U.S.C. § 1681i by failing to delete inaccurate information in her credit file after receiving actual notice of the inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to Nationstar, failing to maintain reasonable procedures with which to filter and verify disputed information, and relying on verification from a source it has reason to know is unreliable.

In its motion to dismiss, TransUnion contends Plaintiff has failed under Rule 12(b)(6) to state a claim against it.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  If a plaintiff fails to satisfy Rule 8(a), the defendant may move to dismiss the plaintiff's claims for "failure to state a claim upon which relief may be granted."  *Id.* 12(b)(6).  To survive such a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff.  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

TransUnion asserts the FCRA imposes no obligation on a CRA like TransUnion to report all accounts for a consumer.  Thus, it argues it cannot be liable for the fact that Nationstar is not

reporting Plaintiff's account to it.   As for the Shellpoint account, TransUnion argues the documentation attached to Plaintiff's complaint belies her allegation that TransUnion inaccurately reported her Shellpoint account.   As a result, TransUnion argues, Plaintiff has not alleged that her consumer reports included inaccurate information, an essential element of both her claims against it.   According to TransUnion, an allegation that it did not report any information related to the Nationstar account is on its face insufficient to allege an inaccuracy.   And the evidence provided about the Shellpoint account shows no inaccuracy existed.

Plaintiff responds that TransUnion has a duty to ensure that information it does report meets maximum accuracy.   It is her position that when a CRA is reporting information on an account that has recently transferred ownership (i.e., her Shellpoint mortgage account), it is incomplete and materially misleading to leave out the reporting of the previous account that was transferred (i.e., her Nationstar account).   She argues that TransUnion's failure to include the Nationstar mortgage tradeline while reporting the Shellpoint mortgage with history indicating it was acquired by Nationstar eliminated a portion of her credit history, making the report false and incomplete and mischaracterizing her creditworthiness.

The FCRA requires CRAs to adopt reasonable procedures for meeting the needs of commerce for consumer credit in a manner which is fair and equitable to the consumer.   *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).   Section 1681e(b) of the FCRA provides that a CRA must use reasonable procedures to assure maximum possible accuracy when preparing a consumer report.   *Id.*   In a recent case, the Fifth Circuit stated that a credit report does not become inaccurate whenever there is an omission, but only when an omission renders the report "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."   *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 568 (5th Cir. 2020).   The

omission of a single credit item does not render a report inaccurate or misleading.  *Id.*  Businesses relying on credit reports have no reason to believe that a credit report reflects all relevant information on a consumer.  *Id.*  Such a requirement would be impossible for a CRA to satisfy, as creditors furnish CRAs with consumer information only on a voluntary basis.  *Id.*

In *Hammer*, the consumer alleged he obtained a credit card from a certain bank and made timely payments on the card.  *Id.*  at 566.  The CRAs reported the account until 2017 and then stopped reporting it.  The bank informed the consumer that it was reporting the status of his credit account to the CRAs.  The consumer requested that each CRA restore the account and sent them proof of the account and payment history, but the CRAs refused to add the account to their credit reports.  *Id.* at 566–67.  The consumer alleged that as a result of losing a positive trade line from his credit report, his credit score fell.  *Id.* at 567.  As Plaintiff has in this case, the consumer sued the CRAs under sections 1681e(b) and 1681i of the FCRA, arguing that his credit report was inaccurate because the omission of verified information harmed his credit status and because the CRAs failed to investigate the omission of the account from his report.  The district court dismissed these claims under Rule 12(b)(6).

On appeal, the Fifth Circuit upheld the dismissal.  It ruled the consumer's section 1681e(b) claim failed.  *Hammer*, 974 F.3d at 568–69.  Only a truly extraordinary case would justify liability on the basis of an incomplete, but not misleading, credit report.  *Id.*; *see Sepulvado*, 158 F.3d at 896.  The consumer's case was not a truly extraordinary one.  *Hammer*, 974 F.3d at 569.  Regarding the consumer's section 1681i claim, the Fifth Circuit ruled that the consumer did not trigger the act's obligation to investigate.  *Id.*  Under section 1681i(a), a consumer can dispute the completeness or accuracy of any item of information contained in his file.  *Id.* The CRA is required to conduct a reasonable reinvestigation to determine whether the disputed information is

5

inaccurate. *Id.* The Fifth Circuit explained that the consumer had not stated a claim because he disputed the missing account; he argued that it should have appeared on his credit report. He disputed the completeness of his *credit report*, not the completeness of an *item* in the report. *Id.*

As in *Hammer*, Plaintiff has failed to state a claim under either section 1681e(b) or 1681i against TransUnion. To succeed under either section, she must prove her consumer report included inaccurate information. *See Norman v. Experian Info. Sols., Inc.*, No. 3:12-CV-128-B, 2013 WL 1774625, at *4 (N.D. Tex. Apr. 25, 2013). The gist of Plaintiff's section1681e(b) claims is the absence of the Nationstar account on her TransUnion Credit report. She argues TransUnion's failure to include the Nationstar account rendered her credit report misleading. But Plaintiff's allegations do not demonstrate that the omission of the Nationstar account made the report inaccurate or misleading. The information reported about the Shellpoint account is accurate. Plaintiff's case is not a truly extraordinary one that would justify liability on the basis of an incomplete, but not misleading, report. *See also Coyle v. Experian Info. Sols., Inc.*, No. 3:19-cv-02645-M, 2020 WL 3052228, at *2 (N.D. Tex. June 7, 2020) (omission of particular obligation from credit report is not FCRA violation); *Desautel v. Experian Info. Sol., LLC*, No. 19-CV-2846, 2020 WL 2215736, at *3 (D. Minn. May 7, 2020) (credit report is not inaccurate or materially misleading simply because it does not mention particular tradeline). Further, Plaintiff's claim that the Nationstar account should have appeared on her report did not trigger a duty under section 1681i(a). Like the consumer in *Hammer*, she disputes the completeness of her credit report, not the completeness of an item in the report.

For these reasons, the Court grants TransUnion's motion to dismiss. Plaintiff argues that in the event she failed to state a claim, she should be allowed to amend her complaint. Rather than dismiss Plaintiff's claims against TransUnion with prejudice, the Court will allow Plaintiff to file

an amended complaint within 30 days from the date of this order. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (court should allow plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, "unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal").

**SO ORDERED.**

Signed February 26, 2021.


_____

Ada Brown
UNITED STATES DISTRICT JUDGE